IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY F. CAPHART,<br>AIS # 304396, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-CV-722-WKW |
| | ) | [WO] |
| WARDEN JOHN CROW, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Johnny F. Caphart, an Alabama prisoner proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. # 1.[1])  In his petition, as later amended, Caphart challenges his November 7, 2022 convictions, which resulted from guilty pleas to three counts of rape in the first degree in violation of Alabama Code § 13A-6-61, one count of production of child pornography in violation of Alabama Code § 13A-12-97, and one count of aggravated child abuse in violation of Alabama Code § 26-15-3.1.  (Docs. # 1, 12.)

---

[1] References to "Doc(s)." are to the document numbers of the pleadings and other materials in the court's electronic record, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

Respondent answered the petition and the amended petition.  (Docs. # 11, 14.) He argues that some of Caphart's claims are unexhausted and procedurally defaulted and that others fail on the merits.  Thereafter, Caphart filed a *pro se* Motion to Expand the Record (Rule 7) and Memorandum in Support.  (Doc. # 18.)  He requests to expand the record in this 28 U.S.C. § 2254 proceeding to include an Alabama Department of Forensic Sciences report titled, "Examination of Biological Evidence," dated June 26, 2014, and disclosed on April 23, 2015.  (Doc. # 18; Doc. # 18-1.)  Respondent filed a response in opposition to this motion (Doc. # 23), and Caphart filed a reply (Doc. # 24).

Based upon a review of the parties' submissions, an evidentiary hearing is not warranted.  *See* Rule 8, *Rules Governing Section 2254 Cases in the United States District Courts* [hereinafter *Rules Governing Section 2254 Cases*].  For the reasons set forth below, expansion of the record is not warranted, and no relief under 28 U.S.C. § 2254 is available to Caphart.  Accordingly, his motion to expand the record will be denied, and his § 2254 petition will be dismissed with prejudice.  Caphart also will be denied a certificate of appealability.

## II.  SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."

This provision limits authority, rather than conferring it, with habeas jurisdiction

established by 28 U.S.C. § 2241. *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th

Cir. 2004). Under § 2241, federal district courts have the power to grant writs of

habeas corpus "within their respective jurisdictions," § 2241(a), when a state-

convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3).

The "in-custody" requirement mandates that the habeas petitioner must "be 'in

custody' under the conviction or sentence under attack at the time his petition is

filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam). Furthermore,

§ 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of

seeking habeas corpus either in the district where he is confined or the district where

the sentencing court is located.'" *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th

Cir. 1985) (Clark, J., dissenting) (citation omitted).

Caphart was in custody under a state-court judgment in a state prison located

in this district when he filed this petition. Furthermore, Petitioner was convicted and

sentenced in the Circuit Court of Montgomery County, Alabama, which is located

in the Middle District of Alabama. Accordingly, this court has subject matter

jurisdiction to consider the petition, and venue is proper.

## III.  BACKGROUND

### A.   <u>State Court Trial Proceedings</u>

#### 1.   *Round One:  2015 Guilty-Plea Convictions and Reversal*

On April 10, 2015, Caphart was indicted on 64 felony counts "relating to a variety of sex offenses involving his three daughters."  (Doc. # 11-12 at 2 n.1; Doc. # 14-1.)   As part of its discovery production, the State provided an Alabama Department of Forensic Sciences report titled, "Examination of Biological Evidence," portions of which are summarized in Part III.D.  (Doc. # 23 at 2; Doc. # 23-1; Doc. #18-1.)

On September 23, 2015, Caphart entered guilty pleas on 12 of the charges. He pleaded guilty to three counts of first-degree rape, three counts of incest, three counts of first-degree sodomy, two counts of production of child pornography, and one count of aggravated child abuse.  (Doc. # 11-12 at 1–2.)  Upon consideration of Caphart's Rule 32 petition for post-conviction relief, *see* Ala. R. Crim. P. 32, the Alabama Court of Criminal Appeals (ACCA) reversed those convictions on January 4, 2019. *See J.F.C. v. State*, 293 So. 3d 987, 992 (Ala. Crim. App. 2019) (per curiam) (reversing the circuit court's judgment and remanding the case "with instructions for the circuit court to grant [Caphart's] Rule 32 petition and allow him to withdraw his guilty plea" based on the circuit court's failure to correctly advise Caphart of certain

4

minimum and maximum sentences prior to accepting his guilty pleas).  (Doc. # 11-2; Doc. # 11-12 at 9.)

### 2.   *Round Two: Post-Remand Proceedings (2022 Guilty-Plea Convictions and Sentences (No Direct Appeal))*

After remand to the Circuit Court of Montgomery County, Alabama, Caphart's trial was scheduled for November 7, 2022.  (Doc. # 1-1 at 17.)  Caphart filed a pretrial motion to suppress 45 images depicting child pornography that had been extracted from his cell phone's deleted files.  The illegal images formed the basis for the counts charging Caphart with production of child pornography involving his three daughters.  The basis for his motion to suppress was that the cell phone was missing from the boxes of evidence the State provided.  He sought to exclude the illegal images or, alternatively, to compel the State to produce the cell phone for inspection.  (Doc. # 1-1 at 116–118 (Mot. dated Nov. 1, 2022).)

The trial court held a hearing on the motion to suppress on November 3, 2022. At the hearing, the following narrative was developed.  The illegal images were extracted from a cell phone that Caphart had handed over to law enforcement, along with a signed consent-to-search form, dated March 4, 2014.  (Doc. # 1-1 at 36–37.) However, after Caphart pleaded guilty in 2015, but before those convictions were reversed in 2019, his then-girlfriend requested the return of the property taken from him.  The cell phone was among the items returned.  (Doc. # 1-1 at 38.)  The

extracted images and the software used to extract the images, however, were retained by the State.  (Doc. # 1-1 at 36–37.)

At the November 3, 2022 hearing, Caphart argued that the images underlying the charges for production of child pornography were recovered from a cell phone that was now missing, that the images were located in the deleted files on the phone, that he had no knowledge those deleted files existed on the phone, and that he was not depicted in the images.  He further argued that, if the State had retained custody of the cell phone, his computer forensics expert could have examined it to determine, based on keystroke data, when the files were deleted and whether the images had been viewed.  (Doc. # 1-1 at 34–40.)  He contended that the State's failure to maintain custody of the phone prevented him from determining whether it contained favorable evidence and amounted to "spoliation of the evidence."  (Doc. # 1-1 at 35.) The trial court orally denied the motion to suppress.  (Doc. # 1-1 at 40.)  It found that "all of the evidence that existed back prior to Mr. Caphart's plea [in 2015] [was] the same evidence that exists now," that the phone was released to "someone associated with or affiliated with" Caphart, and that the motion to suppress was untimely. (Doc. # 1-1 at 38–39.)

On November 7, 2022, which was the scheduled trial date, Caphart elected not to proceed to trial, instead indicating his intent to plead guilty, and the trial court conducted a hearing.  Represented by counsel and pursuant to an agreement with the

State, Caphart pleaded guilty to one count of production of child pornography (count 55), three counts of first-degree rape (counts 56, 59, and 60), and one count of aggravated child abuse (count 62).[2]   (Doc. # 11-3 (Plea of Guilty); Doc. # 14-3 (Transcript of Guilty Plea Colloquy).)  The Plea of Guilty, which was entered by the trial court, provides:

> The Defendant is before the Court and is represented.  The Court on record fully explained all Constitutional rights.  The Court is convinced that Defendant comes into Court voluntarily and understands all his rights.  The Explanation of Rights and Plea of Guilty form is signed by defendant and counsel and the record affirmatively shows colloquy between the Judge and Defendant and that Defendant fully and completely understands he is waiving his Constitutional rights and other effects of a guilty plea and the consequences thereof and the sentence that could be imposed.  Upon the conclusion of said colloquy the Court accepts the guilty plea and adjudicates the Defendant guilty and enters a judgment of guilty . . . .

(Doc. # 11-3 at 1.)  The state court record includes the transcript of the plea colloquy (Doc. # 14-3.), which is discussed with some detail in Part V.C.2.  The trial judge accepted Caphart's guilty pleas and found that he had pleaded guilty "voluntarily and with knowledge of the consequences."  (Doc. # 14-3 at 26.)  The trial judge also

---

[2] On two separate dates (April 10, 2015, and November 7, 2022), Caphart entered guilty pleas that overlapped in both specific counts and broader offense categories charged under different counts. On both dates, he pleaded guilty to Count 56 (first-degree rape) and Count 62 (aggravated child abuse).  He also pleaded guilty on both dates to additional first-degree rape counts:  on April 10, Counts 4 and 8 (in addition to Count 56), and on November 7, Counts 59 and 60 (in addition to Count 56).  Likewise, he pleaded guilty on both dates to production of child pornography—on April 10, Counts 13 and 14, and on November 7, Count 55.

confirmed that Caphart understood that, even though "there [was] a sentencing agreement," the trial judge was not bound to follow it.  (Doc. # 14-3 at 23–28.)

The same date, after waiving a presentence investigation, Caphart was sentenced to 20 years on count 55 "with no eligibility for parole," 20 years on count 62, and life on counts 56, 59, and 60.  (Doc. # 11-4.)  All sentences are being served concurrently.  (Doc. # 11-4.)  The sentences aligned with the nonbinding plea agreement and the State's sentencing recommendations.  (Doc. # 14-3 at 27–28.)

Caphart did not file a direct appeal after his November 7, 2022 guilty pleas. (Doc. # 11-1 at 29.)

**B.    Post-2022 Guilty-Plea Convictions:  Alabama Rule 32 Proceedings**

On July 14, 2023, Caphart, proceeding *pro se*, filed a postconviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure in the Circuit Court of Montgomery County, Alabama ("Rule 32 petition").  (Doc. # 11-6.)  In his Rule 32 petition, Caphart made the following claims:  (1) He argued that the indictment, containing 64 counts, was defective because it was duplicitous, multiplicitous, and lacked specific offense dates and addresses; (2) he claimed double jeopardy, arguing that he was charged in multiple counts for the same conduct and highlighting that count 59, to which he pleaded guilty, was identical to count 4, which was dismissed; and (3) he alleged a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), asserting

that the State withheld or lost his cell phone, which he claimed contained exculpatory evidence.  (Doc. # 11-6.)

On September 28, 2023, the State responded in opposition to the Rule 32 petition.  (Doc. # 11-7.)  On October 3, 2023, the Rule 32 circuit court summarily denied his petition.  The Rule 32 circuit court's final order states:

> This matter is before the Court on the Rule 32 Petition for Relief filed by Defendant [Caphart] and the State of Alabama's Answer to said petition.  Having considered the same, along with applicable law, it is hereby ORDERED Defendant's Rule 32 Petition for Relief is DENIED.  This matter is dismissed with prejudice, costs taxed as paid.

(Doc. # 11-8.)

Caphart appealed to the ACCA, bringing the following claims:  (1) the State withheld material evidence (*i.e.*, his cell phone) in violation of *Brady*; (2) the indictment violated double jeopardy principles because the counts were duplicitous and multiplicitous[3]; and (3) the indictment was unconstitutionally vague.  (Doc. # 11-12 at 3 (ACCA's Mem. Decision describing Caphart's claims "as best we can determine"); *see also id.* at 8 (describing one of Caphart's claims as alleging that the indictments were unconstitutionally vague because they "did not state the time or date of the alleged offense"); Doc. # 11-9 (Appellant Caphart's brief).)

---

[3] He claimed that count 55 was identical to counts 13 to 54, that count 56 was identical to counts 57 and 58, and that count 59 was identical to count 4.  (Doc. # 11-12 at 7; *see also* Doc. # 11-9 at 23 (portion of Caphart's appellate brief titled, "Argument (2) Double Jeopardy Violation (Conviction obtained by a violation of the protection against Double Jeopardy)").)

On June 28, 2024, the ACCA affirmed the decision of the trial court in an unpublished memorandum decision.  (Doc. # 11-12.)  The ACCA rejected the *Brady* claim for failure to meet the pleading requirements of Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure.[4]  As explained by the ACCA, because Caphart raised his *Brady* claim for the first time in a Rule 32 petition (and not on direct appeal), he had to show that the claim involved "newly discovered evidence," as defined by Rule 32.1(e) of the Alabama Rules of Criminal Procedure.[5]  (Doc.

---

[4] Under Alabama Rule 32.3, "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."  Ala. R. Crim. P. 32.3.  Under Alabama Rule 32.6(b), "[e]ach claim in the petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.  A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."  Ala. R. Crim. P. 32.6(b).

[5] Alabama Rule 32.1(e) provides:

> (e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
>
> (1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
>
> (2) The facts are not merely cumulative to other facts that were known;
>
> (3) The facts do not merely amount to impeachment evidence;
>
> (4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

(continued…)

# 11-12 at 4–5 (citing *Payne v. State*, 791 So. 2d 383, 397 (Ala. Crim. App. 2000)).)

The ACCA held that Caphart failed to plead newly discovered evidence with sufficient specificity:

> In the present case, J.F.C.'s <u>Brady</u> claim was insufficiently pleaded because he failed to plead any facts indicating that his claim involved newly discovered evidence. J.F.C. alleges in his petition and on appeal that the State improperly destroyed evidence that would have been material to his defense. However, J.F.C. contends that he informed the trial court of the allegations of the <u>Brady</u> violation in pretrial motion and that the State admitted to willfully getting rid of the evidence at a pretrial suppression hearing. Each of these things occurred before J.F.C. pleaded guilty. Accordingly, J.F.C. failed to plead sufficient facts indicating that his <u>Brady</u> claim involved newly discovered evidence and, thus, he failed to plead facts sufficient to indicate that he was entitled to relief based on his <u>Brady</u> claim.

(Doc. # 11-12 at 6–7.[6])

The ACCA also rejected Caphart's second and third claims. His double jeopardy claim was "clearly meritless" because the counts that he alleged were identical to those to which he pleaded guilty were *nolle prossed*. (Doc. # 11-12 at 8.) His claim that his indictments were unconstitutionally vague also was without merit: "[T]he indictments tracked the language of each of the respective statutes, which apprised [Caphart] with reasonable certainty of the elements of each respective

---

(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.

Ala. R. Crim. P. 32.1(e).

[6] References to "J.F.C." are to Caphart.

offense for which he was being charged." (Doc. # 11-12 at 10; *see also id.* at 8–10 (explaining why Caphart's claim that the indictments against him were "unconstitutionally vague" was meritless).)

Caphart petitioned for a writ of certiorari in the Alabama Supreme Court. He claimed (1) that the trial court abused its discretion by not imposing discovery sanctions against the State for its "clear Discovery Violation"; (2) a due process violation for the destruction of exculpatory evidence; (3) that he was forced to plead guilty on account of a *Brady* violation; (4) that the indictment contained duplicitous and multiplicitous counts, which "infring[ed] upon the principles of Double Jeopardy" and were designed "to force" guilty pleas; and (5) that count 55, charging production of obscene matter and to which he pleaded guilty, did not include the age of the victim. (Doc. # 11-14 at 2–4.) His petition for a writ of certiorari was denied without opinion on September 13, 2024. (Doc. # 11-15.)

## C.    The Instant Petition and Amended Petition for a Writ of Habeas Corpus and Respondent's Answers

On November 7, 2024, Caphart timely filed the instant 28 U.S.C. § 2254 petition, his first petition seeking a writ of habeas corpus. (Doc. # 1.) He subsequently was permitted to amend his petition to add additional claims. (*See* Doc. # 12 (Caphart's response construed as a motion to amend/supplement his petition); *see also* Doc. # 13 (Order construing Caphart's response (Doc. # 12) as a motion to amend/supplement his petition and granting the construed motion).)

Liberally construed, the petition, as amended, alleges six claims. These claims and Respondent's answer to the claims follow.

### 1.    *Claim One (Stand-Alone* Brady *Violation) and Respondent's Answer*

Caphart asserts a stand-alone *Brady* violation on grounds that expand upon the arguments he presented to the state trial court at the November 3, 2022 hearing on his motion to suppress.[7] (Doc. # 12 at 2–5.) Then and now, he similarly focuses on law enforcement's failure to retain the cell phone in its custody. (*Compare* Doc. # 1-1 at 33–40 (focusing his motion-to-suppress arguments on the fact that the cell phone was "missing" from the State's evidence), *with* Doc. # 12 at 3–4 (amended petition arguing that the cell phone "should not have been turned over to anyone" (emphasis omitted)).) He now further elaborates that the State altered the original images after extracting them,[8] and he offers a new theory that the cell phone contained exculpatory information that he describes as follows. He alleges that, in December 2018, his daughter told him a detective returned Caphart's cell phone to

---

[7] The stand-alone *Brady* claim can be discerned only by construing Caphart's numerous allegations in the most liberal manner.

[8] Caphart contends that the forensic examiner who extracted the images from the cell phone later transferred the images from the "mirrored hard drive" to a disc or thumb drive, which changed the original creation date to April 1, 2014. (Doc. # 12 at 11.) To the extent that Caphart alleges that the "spoliation" of the cell phone caused his guilty-plea conviction for production of child pornography (Count 55) to be based on an altered image, thereby violating due process (Doc. # 1-1 at 7–9; Doc. # 12 at 11–12), the court finds this claim is encompassed within the *Brady* claim. *See generally Henry v. Ryan*, 720 F.3d 1073, 1079 (9th Cir. 2013) (stating that the defendant's claim that the state had altered and suppressed crime scene photographs alleged a due process violation under *Brady*).

her and her stepmother.  The cell phone contained the image files underlying the counts charging production of child pornography.  Caphart contends that his daughter reported that the cell phone included images and videos showing other males engaging in sexual activities with one of the other victims and that she (the daughter) had "erased" them.  These erased images, according to Caphart, could have proven "the actual identity of the Perpatrator [sic]," and, thus, were exculpatory.  (Doc. # 1-1 at 4.)  But the crux of Caphart's claim is not the daughter's deletion; it is the State's failure to retain custody and preserve the cell phone and its contents.  On this basis, Caphart contends that the State violated *Brady* and his right to due process under the Fourteenth Amendment to the United States Constitution. (Doc. # 12 at 2–3.)  This claim will be referred to as Claim One (Stand-Alone *Brady* Violation).

Respondent argues that Claim One is procedurally defaulted.  He contends that the ACCA denied Claim One based on "purely procedural state grounds" that constitute an independent and adequate state ground.   (Doc. # 11 at 6–7.) Respondent also contends that Caphart did not fairly present Claim One in his petition for a writ of certiorari in the Alabama Supreme Court and thus did not give the state courts "one full opportunity to resolve" the claim.  (Doc. # 14 at 7–10); *O'Sullivan v Boerckel*, 526 U.S. 838, 842 (1999).

14

### 2. *Claim Two (Stand-Alone* Trombetta/Youngblood *Violation) and Respondent's Answer*

Caphart argues a *Trombetta*/*Youngblood* violation of due process "due to destruction of evidence."[9]  (Doc. # 1 at 7–8; Doc. # 12 at 3.)  Although this claim overlaps with Claim One, it differs in a key respect:  Caphart alleges that the State acted in bad faith by failing to retain custody and preserve the cell phone and its contents and, thus, deprived him of due process.  (Doc. # 1-1 at 2–4.)  This claim will be referred to as Claim Two (Stand-Alone *Trombetta*/*Youngblood* Violation).

Respondent does not address Claim Two as an independent claim (Doc. # 11 at 5, 6–7) but argues, as referenced above, that the claim surrounding the State's

---

[9] In the petition, the *Trombetta* violation is listed as claim two, and the *Youngblood* violation is listed as claim three.  These violations are addressed together as a single claim here.  The *Trombetta*/*Youngblood* framework for demonstrating a due process violation was succinctly laid out in *United States v. Revolorio-Ramo*:

> "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta*, 467 U.S. 479, 488 . . . (1984)." *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993).  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (quoting *Trombetta* at 489 . . . .).  "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police.'" *Illinois v. Fisher*, 540 U.S. 544, 547–48 . . . (2004), quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 . . . (1988).

468 F.3d 771, 774 (11th Cir. 2006).  The *Trombetta*/*Youngblood* framework is distinct from a *Brady* claim because "*Brady* addresses the government's obligations when exculpatory evidence is in the government's possession." *United States v. Hameen*, 2018 WL 6580996, at *5 (M.D. Fla. Dec. 13, 2018).

relinquishment of the cell phone is unexhausted and procedurally defaulted. (Doc. # 11 at 5; *see also* Doc. # 14 at 7–10 (arguing that all Caphart's claims are unexhausted).)

### 3. *Claim Three (Involuntary Guilty Pleas) and Respondent's Answer*

Caphart argues that his guilty pleas were involuntary because the *Brady* and *Trumbetta/Youngblood* violations took away any viable defense he might have had and he faced the insurmountable task of defending against indictments that contained multiplicitous, duplicitous, and vague counts that lacked specific details about the time, date, place, or victim. The lack of specificity hindered his ability to protect against double jeopardy and adequately prepare a defense. (Doc. # 1-1 at 5–7; Doc. # 12 at 12–13.) This claim will be referred to as Claim Three (Involuntary Guilty Pleas).

Respondent contends that this claim is unexhausted because Caphart did not fairly present it when he petitioned the Alabama Supreme Court for a writ of certiorari. (Doc. # 14 at 7–10 (arguing that all Caphart's claims are unexhausted).) Respondent also argues that the state-court record establishes that Caphart's guilty pleas were voluntary, rendering Claim Three without merit. (Doc. # 14 at 10–12.)

### 4. *Claim Four (Duplicitous Indictment as to Count 5) and Respondent's Answer*

Caphart asserts that count 5—charging him with first-degree sodomy in violation of Alabama Code § 13A-6-63—impermissibly combined two subsections

16

of the statute that carried different penalties.  He argues that count 5 violates the Fifth Amendment's Double Jeopardy Clause because it is duplicitous.[10]  (Doc. # 1-1 at 11; Doc. # 12 at 10.)  This claim will be referred to as Claim Four (Duplicitous Indictment as to Count 5).

Respondent contends that Caphart failed to exhaust Claim Four because he did not raise it in his Rule 32 appeal to the ACCA and that, consequently, the claim is procedurally defaulted "because there remain no avenues by which he can exhaust the claim in state court."  (Doc. # 11 at 8–9.)  Alternatively, Respondent contends that Claim Four is "without merit" because "[t]aking [Caphart's] assertion as true, he suffered no prejudice because this count was dismissed."  (Doc. # 11 at 9.)

### 5.    *Claim Five (Vague, Multiplicitous, and Duplicitous Indictment) and Respondent's Answer*

Caphart alleges that specific counts in the indictment to which he pleaded guilty (counts 55, 56, and 60) are unconstitutionally vague because they omit the victim's name, the victim's age, and the date of the offense.  He further argues that the indictment as a whole is unconstitutionally vague, multiplicitous, and duplicitous.  (Doc. # 1-1 at 9–10; Doc. # 12 at 6–10.)  He asserts violations of double

---

[10] Count 5 is one of the counts that was *nolle prossed*.  (Doc. # 14-3 at 26–27.)  Caphart recognizes that this count was *nolle prossed* but states that "the fact remains that the Guilty Plea obtained by the Prosecution rested on a Clear Violation of the Double Jeopardy Clause[,] which was only obtained by the use of a fatally defective indictment."  (Doc. # 1-1 at 11.)

17

jeopardy and due process.  This claim will be referred to as Claim Five (Vague, Multiplicitous, and Duplicitous Indictment).

Respondent contends that Claim Five is unexhausted because Caphart did not fairly present it when he petitioned the Alabama Supreme Court for a writ of certiorari.  (Doc. # 14 at 7–10 (arguing that all Caphart's claims are unexhausted).) Respondent also contends that Caphart waived this claim by pleading guilty.  (Doc. # 14 at 14.)  Finally, he asserts that Claim Five fails on the merits.  (Doc. # 14 at 15–19.)

### 6.    *Claim Six (State Discovery Violation) and Respondent's Answer*

Caphart argues that the State's spoliation of evidence, specifically the cell phone, constituted a bad-faith discovery violation that should have been sanctioned by the trial court, but was not, thus infringing upon his Fourteenth Amendment right to due process.  (Doc. # 1-1 at 8; Doc. # 12 at 2.)  This claim will be referred to as Claim Six (State Discovery Violation).

Respondent contends that Claim Six is unexhausted because Caphart did not fairly present it when he petitioned the Alabama Supreme Court for a writ of certiorari.  He asserts that, as to "the alleged discovery violation," "Caphart did not even mention the factual basis for that claim nor describe how he was prejudiced." (Doc. # 14 at 10.)  Respondent also contends that by pleading guilty, Caphart waived

any claim asserting a discovery violation by the State or, alternatively, that such claim lacks merit.  (Doc. # 14 at 12–14.)

**D.     Caphart's Motion to Expand the Record (Rule 7)**

Caphart filed a Motion to Expand the Record under Rule 7 of the *Rules Governing Section 2254 Cases*, along with a supporting memorandum.  (Doc. # 18.) He seeks to supplement the record in this 28 U.S.C. § 2254 proceeding with an Alabama Department of Forensic Sciences report titled, "Examination of Biological Evidence," and dated June 26, 2014 (Doc. # 18-1), which was disclosed by the State to Caphart on April 23, 2015, in the course of discovery (Doc. # 23-1).  Caphart contends that this biological-evidence report bolsters his existing claims and supports application of the actual-innocence gateway recognized in *Schlup v. Delo*, 513 U.S. 298 (1995), and reaffirmed in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), to overcome any procedural bars.  The report analyzes biological evidence collected from different materials, including fabric from a mattress.[11]  The report reflects that the victims' DNA, Caphart's sperm and DNA, and sperm from an unknown male were detected on a top mattress.  Respondent was directed to file a response to the motion (Doc. # 19) and did so (Doc. # 23).

---

[11] The report does not indicate whether the fabric pieces originated from one mattress or multiple mattresses.  Nevertheless, Respondent's arguments treat the report as reflecting a single mattress (Doc. #23 at 1), and Caphart indicates that "the bed" was located in his home (Doc. # 24 at 9).

## IV.  STANDARDS OF REVIEW

### A.   <u>28 U.S.C. § 2254:  Exhaustion and Procedural Default</u>

In 28 U.S.C. § 2254 cases, the procedural-default doctrine is closely linked to the exhaustion requirement.  Section 2254 requires petitioners to exhaust all available state-law remedies.  In *Freeman v. Commissioner, Alabama Department of Corrections*, the Eleventh Circuit explained the exhaustion doctrine as it applies to Alabama state-court review:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.
>
> The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings.  Consistent with the purpose of the exhaustion rule, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  In the context of a habeas proceeding in the Alabama state courts, one complete round of Alabama's established appellate review process means that the claim must be presented on appeal to the Alabama Court of Criminal Appeals and on petition for discretionary review to the Alabama Supreme Court.[12]

---

[12] Additionally, before seeking discretionary review in the Alabama Supreme Court, a state prisoner must file an application for rehearing in the ACCA.  *See* Ala. R. App. P. 39(c)(1) ("The filing of an application for rehearing in the Court of Criminal Appeals is a prerequisite to review by certiorari in the Supreme Court, except" in circumstances not applicable here.); Ala. R. App. P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court."); *see also Price v. Warden, Att'y Gen. of Ala.*, 701 F. App'x 748, 749–50 (11th Cir. 2017) (per curiam) ("In an Alabama state habeas proceeding, a complete round of the state's established appellate review process includes an appeal to the Alabama Court of Criminal Appeals and a petition for discretionary review in the Alabama Supreme Court.").

> Once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. The Supreme Court has instructed us that if the substance of a federal habeas corpus claim was first presented to the state courts, despite variations in the factual allegations urged in its support, the claim is exhausted. In accordance with this principle, this Court has stated that the claims petitioners present in their federal habeas petition are not required to be carbon copies of the claims they presented to the state courts.

46 F.4th 1193, 1216–17 (11th Cir. 2022) (cleaned up). Stated concisely, for a claim to be fairly presented, the Eleventh Circuit "require[s] that petitioners present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004).

Under the procedural-default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). As the Eleventh Circuit further has explained, "[s]trictly speaking, failing to raise an argument in state court is an exhaustion problem, not a procedural default." *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1162 (11th Cir. 2020). "But a claim is procedurally defaulted for the purposes of federal habeas review where the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his

claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* (cleaned up)

"Under the doctrine of procedural default, a federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011). A state court's ruling is an independent and adequate state-law ground when it (1) "clearly and expressly states that it relied on state procedural rules to resolve the federal claim without reaching its merits"; (2) "rests solidly on state law grounds and is not intertwined with an interpretation of federal law"; and (3) "the state procedural rule is adequate, *i.e.*, not applied in an arbitrary or unprecedented fashion." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1184–85 (11th Cir. 2021) (cleaned up).

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012). To demonstrate an exception, a habeas petitioner must "show cause for the failure to properly present the claim and actual prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Conner*, 645 F.3d at 1287. To establish cause, "a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Thomas*, 992 F.3d at 1185 (citation omitted). "To demonstrate actual

22

prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted).

"Finally, a fundamental miscarriage of justice occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* (cleaned up). Actual innocence "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). A petitioner must show "factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

The petitioner bears the burden of establishing that one of these exceptions to the procedural default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence." (citation omitted)), *modified on reh'g on different grounds*, 459 F.3d 1310 (11th Cir. 2006) (per curiam).

**B.    AEDPA Deferential Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), a federal habeas court is permitted to review a state-court

23

judgment on any claim "adjudicated on the merits." 28 U.S.C. § 2254. However, its review is limited in scope, and relief is dependent upon the petitioner showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2); *see Williams v. Taylor*, 529 U.S. 362, 404–05, 412–13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case but nonetheless reaches a different result. *Williams*, 529 U.S. at 404–06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407.

"Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal habeas court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See id.*

24

at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).  The reviewing court "must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "This is a 'difficult to meet[]' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [the court] would have reached a different conclusion in the first instance.'"  *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (citation omitted).  A state court's determination of a factual issue is "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  § 2254(e)(1).

## V.  DISCUSSION

Liberally construed, the petition, as amended, alleges six claims.  Respondent argues that Caphart's claims are unexhausted, procedurally defaulted, and meritless.

Each claim will be addressed in turn.

## A.   Claim One (Stand-Alone *Brady* Violation)

### 1.   *Whether Claim One is Unexhausted and Procedurally Defaulted*

Respondent argues that Claim One (Stand-Alone *Brady* Violation) is procedurally defaulted.  He asserts that the ACCA affirmed the circuit court's denial of the Rule 32 petition on independent and adequate state procedural grounds, namely Alabama Rules 32.3 and 32.6(b), thus barring federal habeas review of Claim One.  (Doc. # 11 at 6–7.)  Additionally, Respondent contends that the ACCA implicitly determined that Caphart's *Brady* claim was barred from postconviction review under Rule 32.2(a)(5) of the Alabama Rules of Criminal Procedure, as the claim was not raised on direct appeal.  (Doc. # 14 at 4.)  For the reasons to follow, these arguments are not persuasive.[13]

Respondent's defenses on Claim One are not as straightforward as argued and ultimately fail.  First, it is true that "[g]enerally, a state court's refusal to reach the merits of a claim for failure to comply with state procedural rules serves as an 'independent and adequate state ground for denying federal review.'"  *Williams v. Alabama*, 791 F.3d 1267, 1274 (11th Cir. 2015) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)).  However, "because adequacy is a federal question, federal review is

---

[13] Respondent also argues that Caphart failed to fairly present his *Brady* in his petition for a writ of certiorari in the Alabama Supreme Court.  (Doc. # 14 at 7–10.)  This argument is rejected without further discussion.  (*See* Doc. # 11-14 at 2–3.)

not 'barred every time a state court invokes a procedural rule to limit its review of a state prisoner's claims.'" *Id.* (quoting *Cone*, 556 U.S. at 465).

Alabama Rule 32.3, which governs a petitioner's burden of pleading and proof, works in conjunction with Rule 32.6(b), which requires that each claim in the petition "must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Ala. R. Crim. P. 32.6. In *Boyd v. Commissioner, Alabama Department of Corrections*, the Eleventh Circuit reiterated that it "ha[s] held repeatedly that a state court's rejection of a claim under Rule 32.6(b) is a ruling on the merits." 697 F.3d 1320, 1331 (11th Cir. 2012) (citing *Frazier v. Bouchard*, 661 F.3d 519, 525 (11th Cir. 2011); *Borden v. Allen*, 646 F.3d 785, 812 (11th Cir. 2011); and *Powell v. Allen*, 602 F.3d 1263, 1272–73 (11th Cir. 2010)). This holding was reaffirmed by the Eleventh Circuit in *Freeman v. Commissioner, Alabama Department of Corrections*, 46 F.4th 1193, 1220 (11th Cir. 2022). In *Freeman*, the Eleventh Circuit determined that the Rule 32 Alabama appellate court's decision was on the merits and that, therefore, 28 U.S.C. § 2254(d) applied. This conclusion was based on the appellate court's finding that "none of [the petitioner's] allegations were pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b)." *See id.* at 1220 (citation omitted). The *Freeman* decision illustrates that its holding applies to Rule 32.3, as both Rules 32.3 and 32.6(b) were jointly considered in the court's analysis.

Hence, the ACCA's affirmance of the lower court's dismissal due to Caphart's failure to meet his burden under Rule 32.3, by not pleading sufficient facts to satisfy Rule 32.6(b)'s specificity requirements, is treated as a merits determination.

Respondent's additional argument, asserting that the ACCA impliedly relied on Rule 32.2(a)(5), fares no better. In the Eleventh Circuit, a state court's procedural ruling qualifies as an independent and adequate state ground and, thus, can procedurally default a federal habeas claim only if three requirements are met. One requirement is that the state court must "clearly and expressly state that it relied on state procedural rules to resolve the federal claim without reaching its merits." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1184–85 (11th Cir. 2021) (cleaned up). While a state court's dismissal of a claim based on Alabama Rule 32.2(a)(5) exemplifies such a procedural rule, *see Boyd*, 697 F.3d at 1335, the ACCA did not expressly rely on this rule when affirming the circuit court's denial of Rule 32 relief on the *Brady* claim. Respondent concedes as much, stating that the ACCA's purported reliance on Alabama Rule 32.2(a)(5) was merely "implicit." (Doc. # 14 at 4.) But "explicit" is the standard.

Separately, another requirement is that the procedural ruling must "rest solidly on state law grounds" and not be "intertwined with an interpretation of federal law." *Thomas*, 992 F.3d at 1184 (cleaned up). A comparison of Alabama Rule 32.1(e)(1) and the *Brady* elements reveals that the ACCA's decision is intertwined with an

28

interpretation of federal law.  A *Brady* claim, which arises from federal law, has three elements:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Alabama Rule 32.1(e)(1), the element the ACCA found missing, provides:

> (e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
>
> (1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

Ala. R. Crim. P. 32.1(e)(1).

Both Alabama Rule 32.1(e)(1) and the second *Brady* element include a temporal knowledge component.  Under *Brady*, a defendant cannot satisfy the second element if "prior to trial, he had within his knowledge the information by which he could have ascertained the alleged *Brady* material."  *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) (alterations adopted) (citation omitted); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1334–35 (11th Cir. 2012) ("Evidence is not considered to have been suppressed if 'the evidence itself . . . proves that [the petitioner] was aware of the existence of that evidence before trial.'" (quoting *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995)).  Similarly,

Rule 32.1(e)(1) requires that facts "were not known" at the time of trial and "could not have been discovered" through reasonable diligence. Ala. R. Crim. P. 32.1(e)(1). Hence, the ACCA's determination of whether Caphart sufficiently pleaded a *Brady* claim involving newly discovered evidence under Rule 32.1(e) intersected with a federal constitutional requirement of *Brady*. The ACCA's decision does not satisfy *Thomas*'s elements for establishing that the ACCA ruling rested on an independent and adequate state ground. *See* 992 F.3d at 1184–85.

In sum, the procedural-default doctrine does not bar federal habeas review. Consequently, the court proceeds to a determination on the merits as to Claim One.

### 2.    *Whether Claim One Fails on the Merits*

The *Brady* claim fails on the merits under the AEDPA's deferential review.[14] *See* 28 U.S.C. § 2254(d). Caphart raised a purported *Brady* claim in the trial court *prior to* the scheduled trial date and his guilty pleas taken on November 7, 2022. In a pretrial motion to suppress and at a suppression hearing, both of which occurred before the scheduled trial date and his guilty pleas, Caphart argued that the State's release of the cell phone from its custody prevented his computer forensic expert

---

[14] The Eleventh Circuit "has not decided whether a guilty plea waives a *Brady* claim." *United States v. McCoy*, 636 F. App'x 996, 998–99 (11th Cir. 2016) (per curiam) (citing *United States v. Matthews*, 168 F.3d 1234, 1242 (11th Cir. 1999), *amended on denial of reh'g sub nom. United States v. Moore*, 181 F.3d 1205 (11th Cir. 1999)); *see also United States v. Williams*, 824 F. App'x 750, 755 n.2 (11th Cir. 2020) (noting that, in *Matthews*, the Eleventh Circuit "declined to decide 'whether a guilty plea waives a defendant's claim under *Brady*'"). For purposes of the merits analysis, it will be assumed that Caphart can raise a *Brady* claim after entering guilty pleas.

from analyzing the phone to determine whether it contained favorable evidence. (Doc. # 1-1 at 34–40.)  At the same hearing, the State also admitted that the cell phone had been released to Caphart's girlfriend at some point after Caphart pleaded guilty in 2015.  (Doc. # 1-1 at 38 ("It [the cell phone] should not have been released, but it is in the defendant's family's possession.").)  Orally denying the motion to suppress, the trial court rejected the *Brady* claim.  (*See* Doc. # 1-1 at 33–40.) Additionally, at an earlier proceeding on September 19, 2022, Caphart admitted that he knew about the purportedly "new evidence" involving the "photos, videos and devices" as early as December 2018.  (Doc. # 1-1 at 19, 28.)

On the Rule 32 appeal, the ACCA found that Caphart informed "the trial court of the allegations of the Brady violation in pretrial motion and that the State admitted to willfully getting rid of the evidence at a pretrial suppression hearing.  Each of these things occurred before J.F.C. pleaded guilty."   (Doc. # 11-12 at 6–7.)  The ACCA therefore held that Caphart was not entitled to *Brady* relief because he failed to show that his *Brady* claim was based on newly discovered evidence. (Doc. # 11-12 at 7.)

The ACCA issued the "last reasoned decision" on Caphart's *Brady* claim.  *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009) (explaining that, for AEDPA review, a federal court "look[s] through" a summary decision to the "last reasoned decision" addressing the issue).  A defendant cannot

succeed on a *Brady* claim where "prior to trial, he had within his knowledge the information by which he could have ascertained the alleged *Brady* material." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) (alterations adopted) (citation omitted). Because the state-court record establishes that Caphart raised the alleged *Brady* issue prior to his scheduled trial date and prior to entering his November 7, 2022 guilty pleas, the ACCA reasonably concluded that Caphart could not satisfy *Brady* suppression (or lack of prior knowledge). The ACCA's decision therefore is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and it is not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Caphart's *Brady* claim fails on the merits.[15]

**B.    Claim Two (Stand-Alone *Trombetta*/*Youngblood* Violation)**

Caphart's *Trombetta*/*Youngblood* claim arises from the State's release of its possession of the cell phone before Caphart's November 7, 2022 guilty pleas. *See supra note* 9 (discussing the distinction between *Brady* and *Trombetta*/*Youngblood* claims). Focusing on the appellate proceedings concerning Caphart's petition for certiorari review in the Alabama Supreme Court, Respondent contends that Claim

---

[15] Caphart's elaboration of his *Brady* claim in his 28 U.S.C. § 2254 petition does not change the outcome, even under *de novo* review, because of when he learned the relevant information. Before entering his guilty pleas on November 7, 2022, he learned from his daughter of the images he now contends point to a different perpetrator. (Doc. # 1-1 at 4.)

Two is unexhausted and procedurally defaulted.  (Doc. # 11 at 5; *see also* Doc. # 14 at 7–10.)  Claim Two fails both procedurally and on the merits.

### 1.    *Whether Claim Two is Unexhausted and Procedurally Defaulted*

Caphart did not fairly present a *Trombetta/Youngblood* claim in his petition for a writ of certiorari to the Alabama Supreme Court.[16]  For purposes of a *Trombetta/Youngblood* claim, the lost evidence must "possess an exculpatory value that was apparent before the evidence was destroyed," and the failure to preserve such "potentially useful evidence does not violate the due process clause unless a criminal defendant can show bad faith on the part of the police."  *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) (cleaned up).  Caphart's petition for a writ of certiorari in the Alabama Supreme Court did not provide adequate notice of a federal claim alleging the State's destruction of evidence under the *Trombetta/Youngblood* bad-faith framework.  (*see* Doc. # 11-14 at 2–3.)

In his petition for a writ of certiorari to the Alabama Supreme Court, Caphart did not claim that the "destruction" of the allegedly "exculpatory evidence" was carried out in bad faith.  (Doc. # 11-14 at 2–3.)  Caphart tethered his destruction-of-evidence claim to "*Ex parte Dickerson*," likely referring to *Ex parte Dickerson*, 517

---

[16] The ACCA also did not interpret Caphart's appeal during the Rule 32 proceedings as asserting a *Trombetta/Youngblood* claim.  (*See* Doc. # 11-12 at 3 (stating that "as best we can determine," the Rule 32 petition presents a claim that "the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)").)

So. 2d 628 (Ala. 1987). In that case, the Alabama Supreme Court analyzed a claim alleging the police's intentional destruction of an allegedly exculpatory videotape as a *Brady* claim. *Id.* at 630. Caphart did not cite either *Trombetta* or *Youngblood* as he does in his current § 2254 petition. A reasonable reader would not discern the federal legal basis or the factual foundation for a *Trombetta/Youngblood* claim as neither the federal case law nor the bad-faith framework was alleged in his petition for a writ of certiorari. *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004). Because Caphart no longer has a state remedy available to exhaust a *Trombetta/Youngblood* claim, this claim is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Accordingly, Respondent's failure-to-exhaust defense succeeds as to this claim.

### 2.    *Whether Claim Two Fails on the Merits*

Even if Claim Two were not procedurally defaulted, and regardless of the state courts' lack of a merits analysis on a *Trombetta/Youngblood* claim, it still would fail on the merits under *de novo* review. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Sears v. Warden GDCP*, 73 F.4th 1269, 1280 (11th Cir. 2023) (per curiam) ("When the state court did not reach the merits of the claim, federal habeas review is not subject

to the deferential standard that applies under AEDPA. Instead, the claim is reviewed de novo." (cleaned up)).

The state-court record does not indicate that law enforcement officials released the cell phone to Caphart's girlfriend because of "official animus" or a "conscious effort to suppress exculpatory evidence." *California v. Trombetta*, 467 U.S. 479, 488 (1984). There is no indication that the police believed the cell phone had any evidentiary value favorable to Caphart. Additionally, as noted by the trial court, the cell phone was given to someone who was "associated or affiliated with" Caphart. (Doc. # 1-1 at 39.) The release of the phone to someone affiliated with Caphart suggests that law enforcement officials were not attempting to hide or destroy potentially exculpatory evidence. At worst, the State's relinquishment of the cell phone could be deemed negligent, but mere negligence is insufficient to show bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

### C.    <u>Claim Three (Involuntary Guilty Pleas)</u>

Caphart argues that his guilty pleas were involuntary because of *Brady* and *Trumbetta/Youngblood* violations and because the indictment embodied multiplicitous, duplicitous, and unconstitutionally vague counts, all of which left him no option but to plead guilty. Respondent argues that Claim Three is unexhausted and procedurally defaulted. Alternatively, he argues that the state-trial court record establishes that Caphart's guilty pleas were voluntary. (Doc. # 14 at 7–

35

12.)  Claim Three fails.

### 1.    *Whether Claim Three Is Unexhausted and Procedurally Defaulted*

"[A] challenge to the voluntariness of [a] guilty plea may be presented for the first time in a timely filed Rule 32 petition," even when no direct appeal was filed. *Faulkner v. State*, 741 So. 2d 462, 465 (Ala. Crim. App. 1999) (citing *Cantu v. State*, 660 So. 2d 1026 (Ala. 1994)).  Even so, to obtain federal habeas review under § 2254 on the facts of this case, Caphart must have presented the claim in his Rule 32 petition and then pursued it through one complete round of Alabama's appellate review by appealing any adverse ruling, seeking rehearing in the Alabama Court of Criminal Appeals, and raising the claim in a petition for writ of certiorari to the Alabama Supreme Court.  *See Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1217 (11th Cir. 2022) (explaining the exhaustion doctrine as it applies to Alabama state-court review); Ala. R. App. P. 39(c)(1) ("The filing of an application for rehearing in the Court of Criminal Appeals is a prerequisite to review by certiorari in the Supreme Court, except" in circumstances not applicable here); *see also Arrington v. State*, 716 So. 2d 237, 239 (Ala. Crim. App. 1997) ("An appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.").

Caphart did not file a direct appeal in his criminal case, and he did not raise a claim challenging the alleged involuntariness of his guilty pleas in his Rule 32

petition. (*See* Doc. # 11-6; Doc. # 11-12 at 3.) He first attempted to raise this claim during his Rule 32 proceedings in his petition for a writ of certiorari to the Alabama Supreme Court. (*See* Doc. # 11-14.) Caphart did not fairly present this claim to the Alabama state courts and thus did not exhaust state court remedies as to this claim.[17] Because those remedies are now unavailable due to state-law procedural limitations, *see* Ala. R. Crim. P. 32.2(b) (prohibiting successive collateral petitions), 32.2(c) (limitations period), Caphart's failure to exhaust results in a procedural bar to federal habeas review under § 2254.

## 2. *Whether Claim Three Fails on the Merits*

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991), *overruled on other grounds*, *United States v. Garey*, 540 F.3d 1253 (11th Cir. 2008). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Id.* (citation omitted). Because a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," a guilty plea is "accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

---

[17] Based on this finding, it is unnecessary to address to whether the petition for a writ of certiorari itself fairly presented Claim Three.

The state court proceedings from November 7, 2022, demonstrate that the trial judge conducted a comprehensive inquiry of Caphart, adhering to constitutional due process and ensuring that Caphart's guilty pleas to the five counts were voluntary and informed.  Represented by counsel, Caphart was under oath during the change-of-plea hearing.  (Doc. # 11-3 at 1, 5–6.)  The trial judge verified Caphart's understanding of the child sex offense charges to which he was pleading guilty and the special statutory restrictions and penalties under Alabama law.  (Doc. # 14-3 at 6–11, 20–24.)  The trial judge ensured that Caphart had reviewed all evidence and had the opportunity to prepare for trial with his counsel.  (Doc. # 14-3 at 14.)  The prosecutor outlined the evidence that the State expected to show for the five counts, and Caphart agreed that the proffered evidence was "correct."  (Doc. # 14-3 at 16–20.)

The trial court explained Caphart's constitutional rights and confirmed his understanding that by pleading guilty, he was waiving his right to a jury trial and appeal.  (Doc. # 11-3 at 1.)  Caphart also acknowledged that he had reviewed the Explanation of Rights and Plea of Guilty form with his attorney prior to signing it.  (Doc. # 11-3 at 13–14.)  He stated that he had no questions about the form, indicating a clear understanding of his rights and the implications of his pleas.  (Doc. # 14-3 at 13–14.)  He affirmed that his pleas were made voluntarily, without coercion or undue influence  (Doc. # 14-3 at 14–16.)

After Caphart pleaded guilty on November 7, 2022, the trial judge confirmed twice that he still wished to maintain his pleas, and the trial judge made sure Caphart understood that the court was not bound by the parties' sentencing agreement. (Doc. # 14-3 at 23–24, 26.)  The trial judge explicitly found that Caphart's guilty pleas were made voluntarily and with full knowledge of the consequences. (Doc. # 14-3 at 26.)  The state-court record supports the conclusion that Caphart's pleas were voluntary, knowing, and intelligent and, thus, comported with due process.

Caphart's contentions that an alleged *Brady* violation and defects in the indictment rendered his pleas involuntary are unsupported.  For instance, as previously explained, the alleged *Brady* violation does not withstand review under the AEDPA, *see* 28 U.S.C. § 2254(d), and, therefore, does not demonstrate a constitutional infirmity.  His arguments fail to overcome the strong presumption of truthfulness afforded to his sworn statements during the plea colloquy.  *See Blackledge*, 431 U.S. at 73–74.  The state court proceedings clearly show that Caphart understood the charges, understood the consequences of pleading guilty, and voluntarily pleaded guilty, without coercion.  *See Stano*, 921 F.2d at 1141.  Consequently, Claim Three cannot survive on the merits.

**D.    Claim Four (Duplicitous Indictment as to Count 5)**

In Claim Four, Caphart asserts that count 5, which was *nolle prossed* after his guilty pleas to other counts (Doc. # 14-3 at 26–27), impermissibly combined two subsections of the first-degree rape statute that carry different penalties.  He argues that count 5 violates the Fifth Amendment's Double Jeopardy Clause because it is duplicitous.  (Doc. # 1-1 at 11; Doc. # 12 at 10.)  Respondent contends that federal habeas review of Claim Four is precluded based on the exhaustion and procedural default doctrines and, alternatively, that the claim lacks merit because the State *nolle prossed* this count.  (Doc. # 11 at 8–9.)  Claim Four fails for the following reasons.

**1.    *Whether Claim Four is Unexhausted and Procedurally Defaulted***

As Respondent correctly argues, Caphart did not raise any semblance of this claim in his Rule 32 appeal to the ACCA.  (Doc. # 11 at 8–9; Doc. # 11-9.)  He, thus, deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Because there are no avenues in state court by which he can now exhaust the claim, the claim is procedurally defaulted. *See Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1329 (11th Cir. 2021).

40

### 2.    *Whether Other Reasons Foreclose Federal Habeas Relief*

Caphart's argument that the State's *nolle prosequi* of count 5 did not cure the alleged fatal defect in the indictment and, thus, affected the validity of his guilty pleas to other counts (Doc. # 1-1 at 11) also is foreclosed for the reasons detailed in Parts V.C.2. & E.  Namely, Caphart's voluntary guilty pleas preclude him from raising Claim Four, *see supra* Part V.C.2., and the indictment is not so deficient so as to have deprived the state court of jurisdiction, *see infra* Part V.E.

### E.    **Claim Five (Vague, Multiplicitous, and Duplicitous Indictment)**

Claim Five asserts that the indictment, both as a whole and in specific counts, is unconstitutionally vague, multiplicitous, and duplicitous, thereby violating double jeopardy and due process.  (Doc. # 1-1 at 9–10; Doc. # 12 at 6–10.)  Respondent contends that Claim Five is unexhausted, foreclosed by Caphart's guilty pleas, and fails on the merits.  (Doc. # 14 at 7–10, 14, 15–19.)  Claim Five fails for the second and third reasons, making it unnecessary to address the first.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

#### 1.    *Whether the Alleged Indictment Deficiencies Affected the State Court's Jurisdiction so as to Permit a Federal Habeas Corpus Claim*

"The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment . . . is so deficient that

41

the convicting court is deprived of jurisdiction." *DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982) (per curiam) (citations omitted).   Under Alabama law, "a defect in a criminal indictment no longer deprives the trial court of jurisdiction, as it had under the common law, but instead is a nonjurisdictional error that may be waived." *Ex parte Jenkins*, 992 So. 2d 1248, 1250 (Ala. 2007); *see also Ex parte Seymour*, 946 So. 2d 536, 539 (Ala. 2006) ("A defect in an indictment may be error, *see* Rule 15.2(d), Ala. R. Crim. P.—or even constitutional error, *see* Ala. Const., Art. I, § 8—but the defect does not divest the circuit court of the power to try the case.").   Hence, Caphart's challenges that the indictment is unconstitutionally vague, duplicitous, and multiplicitous do not implicate state-court jurisdictional issues.   Moreover, the ACCA expressly rejected Caphart's claim that the five counts to which he pleaded guilty were unconstitutionally vague.  (Doc. # 11-12 at 8–10.)  The ACCA thus necessarily determined that the indictment was sufficient for state-court jurisdictional purposes.

### 2.      *Whether Claim Five is Foreclosed Due to Caphart's Guilty Pleas*

Claim Five is foreclosed based upon Caphart's guilty pleas.  (Doc. # 14 at 14.)  "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* (holding that a state defendant's guilty plea, made on counsel's advice, foreclosed his federal habeas corpus claim that an unconstitutionally selected grand jury issued the indictment); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative[,] then the conviction and the plea, as a general rule, foreclose the collateral attack."). An exception to this rule lies "where on the face of the record the court had no power to enter the conviction or impose the sentence." *Broce*, 488 U.S. at 569. The rule, and not the exception, applies here.

As detailed in Part V.C.2, Caphart's guilty pleas were voluntary. His guilty pleas signify a break in the sequence of events that preceded them in the criminal process. *See Tollett*, 411 U.S. at 267. Unless the stated exception applies, these pleas foreclose Caphart's challenges to the alleged constitutional infirmities in the indictment.

The stated exception does not apply. As already discussed, the alleged defects in the indictment—that it is vague, duplicitous, and multiplicitous—did not deprive the state court of the "power to enter the conviction[s] or impose the sentence[s]." *Broce*, 488 U.S. at 569; *see also Ex parte Jenkins*, 992 So. 2d 1248, 1250 (Ala. 2007)

43

("[A] defect in a criminal indictment no longer deprives the trial court of jurisdiction, as it had under the common law, but instead is a nonjurisdictional error that may be waived."). Therefore, Caphart's voluntary guilty pleas prevent him from challenging alleged defects in the state-court indictment.

**F.      Claim Six (State Discovery Violation)**

In Claim Six, Caphart argues that the State's spoliation of evidence, specifically the cell phone, constituted a bad-faith discovery violation that should have been sanctioned by the trial court, but was not, thus infringing upon his Fourteenth Amendment right to due process. (Doc. # 1-1 at 8; Doc. # 12 at 2.) Respondent contends that Claim Six is unexhausted, foreclosed by his guilty pleas, and lacks merit. (Doc. # 14 at 7–14.) Claim Six fails for the first two reasons, rendering it unnecessary to address the third.

**1.      *Whether Claim Six Is Unexhausted and Procedurally Defaulted***

Claim Six is unexhausted because Caphart did not fairly present it when he petitioned the Alabama Supreme Court for a writ of certiorari. (Doc. # 14 at 7–10.) In that petition, Caphart alleged that the trial court committed an "abuse of discretion" by not imposing sanctions for this discovery violation and that the State's violation of state discovery rules prejudiced the outcome of his case. (Doc. # 11-14 at 2.) Caphart briefed this issue solely as a matter of state law, without referencing the federal constitution or federal case law to support this ground for relief. There

44

is nothing in the petition that would have alerted the Alabama Supreme Court that the discovery-violation claim involved a federal constitutional issue, and "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted); *see also Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1356 (11th Cir.) (holding that the petitioner's appellate-ineffectiveness claim was unexhausted and procedurally defaulted where, among other things, he framed the claim in his first Rule 32 appeal under the Alabama Rules of Appellate Procedure and "did not cite an independent federal basis for review"), *cert. denied sub nom. Carruth v. Hamm*, 145 S. Ct. 208 (2024). Additionally, Caphart does not articulate the factual basis of the alleged discovery violation. Neither the "claim's particular legal basis" nor its "specific factual foundation" can be discerned from Caphart's petition. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004). Consequently, Caphart did not exhaust Claim Six in the state courts.[18] It is procedurally defaulted "for the purposes of federal habeas review" because "the court to which [Caphart] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1162 (11th Cir. 2020).

---

[18] The ACCA also did not interpret Caphart's appeal during the Rule 32 proceedings as asserting such a claim. (*See* Doc. # 11-12 at 3.)

**2.      *Whether Claim Six is Foreclosed Due to Caphart's Guilty Pleas***

Just like Claims Four and Five, Claim Six is foreclosed based upon Caphart's voluntary guilty pleas.  The exception to this rule, which lies only "where on the face of the record the [state] court had no power to enter the conviction or impose the sentence," does not apply.  *United States v. Broce*, 488 U.S. 563, 569 (1989).

First, this court has determined that Caphart's guilty pleas in state court were made voluntarily, intelligently, and within federal constitutional norms.  The state trial judge went to great lengths to ensure voluntariness on the record.  Second, the alleged discovery violation did not deprive the state court of its authority to enter Caphart's convictions and impose the sentences.    Under Alabama law, nonjurisdictional matters include a defendant's failure "to secure a ruling from the trial court on pretrial motions to exclude or suppress."  *Barnes v. State*, 354 So. 2d 343, 345 (Ala. Crim. App. 1978).  By logical extension, a pretrial violation of state discovery rules would be nonjurisdictional.  *Cf. United States v. Castillo*, 568 F. App'x 774, 781 (11th Cir. 2014) (per curiam) ("Because the alleged discovery violation is not the type of claim that can be resolved from the face of the indictment or the record at the time of the plea without further proceedings, [the defendant's] guilty plea waived this nonjurisdictional argument.").  For these reasons, Claim Six, which is based on a state discovery violation, is foreclosed by Caphart's guilty pleas.

**G.    Actual-Innocence Gateway to Excuse Procedural Default**

An exception to procedural default applies when "the failure to consider the claim would result in a fundamental miscarriage of justice." *Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011). "[A] fundamental miscarriage of justice occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1185 (11th Cir. 2021) (citation omitted). Invoking this actual-innocence gateway and relying on the biological-evidence report, Caphart seeks to excuse his procedural default. (Doc. # 18 at 1 (citing *Schlup v. Delo*, 513 U.S. 298 (1995)); (Doc. # 24 at 3–4.) This gateway issue need not be reached because Caphart's five procedurally defaulted claims fail irrespective of the procedural default. As discussed, three of those claims fail on the merits: (1) Claim Two (Stand-Alone *Trombetta*/*Youngblood* Violation); (2) Claim Three (Involuntary Guilty Pleas); and (3) Claim Five (Vague, Multiplicitous, and Duplicitous Indictment). Claim Five also is foreclosed by Caphart's voluntary guilty pleas. In addition, Claim Four (Duplicitous Indictment as to Count 5) and Claim Six (State Discovery Violation) are foreclosed by Caphart's voluntary guilty pleas. Because each of Caphart's procedurally defaulted claims are independently meritless or barred by his voluntary guilty pleas, Caphart could not obtain habeas relief even if his procedural default were excused.

Furthermore, and alternatively, Caphart cannot show his factual innocence for purposes of the gateway. *See Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (holding that a petitioner must show "factual innocence, not mere legal insufficiency." (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998))). The biological-evidence report does not establish Caphart's factual innocence of the offenses, which include production of child pornography, first-degree rape, and aggravated child abuse. The report analyzes biological material collected from a top mattress in Caphart's bedroom and reflects that the victims' DNA, Caphart's sperm and DNA, and sperm from an unknown male were detected on that mattress. (Doc. # 18-1.) The presence of an unknown male's sperm does not negate Caphart's guilt. At most, the forensic evidence is ambiguous, but it does not exclude Caphart as the perpetrator of the conduct underlying his guilty-plea convictions.[19] Caphart has failed to demonstrate that the biological-evidence report "shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). In short, the biological-evidence report does not provide grounds to excuse the procedural default.

---

[19] This part of the discussion is not intended to address or resolve every issue implicated by the actual-innocence gateway on the facts presented here. Instead, it provides an independent, alternative basis to deny the gateway on this limited ground.

**H.    Caphart's Motion to Expand the Record**

Caphart moves to expand the record pursuant to Rule 7(a) of the *Rules Governing Section 2254 Cases* ("Habeas Rule 7") to include the biological-evidence report, which he contends both bolsters his existing claims and establishes his alleged actual innocence.  (Doc. # 18.)  The discussion in Part V.G. makes it unnecessary to address expansion of the record for purposes of the actual-innocence gateway because, even if the biological-evidence report is considered, the gateway remains unavailable to Caphart.  However, because Caphart argues that the biological-evidence report should be included in the habeas record to support his claims generally, the motion will be addressed.  (Doc. # 18.)  Respondent opposes the motion, arguing that "because Caphart never pursued developing the forensic report as a basis for innocence in state court," he fails to satisfy the requirements of 28 U.S.C. § 2254(e)(2).  (Doc. # 23 at 9.)  Respondent is correct to invoke § 2254(e)(2), and Caphart cannot meet its requirements.

The standard governing whether a habeas petitioner may supplement the record with evidence not presented in state court depends on whether the underlying claim was adjudicated on the merits in the state court.  In *Cullen v. Pinholster*, the Supreme Court held that "review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. 170, 181 (2011).  The Court explained:

49

> Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

*Id.* at 181–82. Accordingly, a federal habeas court may not expand the record to include evidence that was not before the state court when it decided the claim on the merits. *See Brannon v. Sec'y, Fla. Dep't of Corr.*, 813 F. App'x 376, 382–83 (11th Cir. 2020) (per curiam) (holding that the district court improperly expanded the record by considering evidence not presented to the state court when it adjudicated the claim on the merits).

However, different principles apply when the claim was not adjudicated on the merits in state court because the petitioner failed to develop the claim's factual basis during the state-court proceedings. In that circumstance, a petitioner "must comply with [28 U.S.C.] § 2254(e)(2) in order to expand the record under [Habeas] Rule 7." *Ward v. Hall*, 592 F.3d 1144, 1162–63 (11th Cir. 2010); *see also Shinn v. Ramirez*, 596 U.S. 366, 389 (2022) ("[W]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied."). Although § 2254(e) explicitly applies only to evidentiary hearings, "the conditions

50

of § 2254(e)(2) generally apply to Petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing." *Ward*, 592 F.3d at 1162 (citation omitted). Hence, although Habeas Rule 7 permits a habeas petitioner to submit materials "relating to the petition," that rule cannot be used to circumvent the restrictions imposed by § 2254(e)(2). *See id.* at 1162–63 (applying § 2254(e)(2) to a habeas petitioner's motion to expand the record). Thus, the limitations of § 2254(e)(2) apply equally whether a petitioner seeks an evidentiary hearing or seeks to introduce new evidence through a motion to expand the record.

Here, Claim One was adjudicated on the merits in state court. Under *Cullen*, this court's review of that claim is confined to the state-court record. 563 U.S. at 181–82. Accordingly, expansion of the habeas record to add the biological-evidence report is not permitted for Claim One.

Claims Two through Six stand on a different footing: They were never adjudicated on the merits in state court, the factual bases were not developed there, and the claims are now procedurally defaulted. Therefore, Caphart's motion to supplement the record is governed by § 2254(e)(2). Relevant here, § 2254(e)(2) provides that where a petitioner "failed to develop the factual basis of a claim in State court proceedings," he or she is not entitled to an evidentiary hearing (or to expansion of the § 2254 record) unless "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due

51

diligence" or "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2)(A)(ii), (B).

Caphart cannot make the necessary showing to warrant expansion of the record under either § 2254(e)(2)(A)(ii) or § 2254(e)(2)(B).  In *Ward*, analyzing § 2254(e)(2), the Eleventh Circuit held that the petitioner failed to exercise due diligence when he possessed evidence but failed to present it during state habeas proceedings, then later sought to introduce that evidence in the federal habeas court for the first time.  *Id.*; *see also Gulbronson v. Dixon*, 2023 WL 12273466, at *3 (N.D. Fla. June 8, 2023) ("If a petitioner knew of the existence of information at the time of his state court proceedings, but did not present it until federal habeas proceedings, he has failed to develop the factual basis for his claim diligently." (cleaned up)).  The same outcome is required here.  Caphart possessed the biological-evidence report in April 2015, more than seven years prior to his second round of guilty pleas and related Rule 32 proceedings.  Yet, as he concedes, he never presented to the state courts any claim predicated on the biological-evidence report.  (Doc. # 18.)

However, Caphart contends that he has "good cause" for his delay (Doc. # 18 at 2), which he attempts to set out in his motion and reply (Docs. # 18, 24).  He says that, after the initial reversal of his guilty-plea convictions, the State failed to re-

52

produce the biological-evidence report to his new counsel, and for that reason, he suggests he should not be faulted for failing to present a factual basis grounded in that report during the post-reversal, state-court proceedings.  (Doc. # 24 at 2.)  But Caphart identifies no authority and offers no persuasive argument for why the State's alleged failure to re-send discovery to his new counsel relieved him of the obligation to present available evidence of which he had knowledge and possession.  The biological-evidence report had been disclosed to Caphart in April 2015; it remained available to him and could have been presented either before or after he pleaded guilty the second time in November 2022.  Importantly, following his November 2022 guilty pleas, Caphart represented himself in his state collateral proceedings. On these facts, any failure to develop the factual record is attributable to Caphart's lack of diligence, not to any external impediment.

Caphart also contends that he did not realize the significance of the biological-evidence report, disclosed in April 2015, until after the November 3, 2022 pretrial hearing when "the State admitted Detective P.J. Moore surrendered the primary digital evidence [the cell phone] in December of 2015." (Doc. # 18 at 2.)  However, Caphart's explanation does not show due diligence.  First, the key factual predicate for any claim based on the biological-evidence report was available years earlier in April 2015, and nothing about the State's November 2022 admission was necessary to recognize or pursue such a claim.  Caphart's theory that the biological-evidence

report's identification of another male's sperm on the mattress supports his innocence was available the moment Caphart received the report in 2015. Due diligence requires acting on known facts. Second, by Caphart's own account, he had additional supporting facts by December 2018 when he says one of his daughters told him about allegedly exculpatory photos on the cell phone. (Doc. # 1-1 at 4.) He also knew at that time that the cell phone was no longer in the State's custody. That information, combined with the biological-evidence report, gave him ample basis to present any related claim in state court well before he decided to plead guilty the second time on November 7, 2022. Third, the November 3, 2022 hearing did not supply a new predicate for a claim or theory based on the biological-evidence report. The State's admission that a detective had turned over the cell phone in December 2015 concerns the phone's custody, not the existence or contents of the biological-evidence report, which Caphart already had. This admission does not explain why Caphart could not have timely pursued a claim grounded in the report's findings. Fourth, Caphart still pleaded guilty on November 7, 2022, despite possessing the biological-evidence report, the alleged 2018 information, and the State's admission. His guilty pleas further undercut any claim that he acted diligently once he had the relevant facts.

Taken together, Caphart's timeline shows delay attributable to his own inaction, not to any late-discovered factual predicate. On these facts, his asserted

54

justification is not due diligence and does not support expanding the record to add the biological-evidence report.   Caphart cannot seek federal evidentiary development now; § 2254(e)(2)(A)(ii) bars expansion of the record as to Claims Two through Six.

Finally, for the reasons explained in Part V.G., Caphart has not shown that the biological-evidence report satisfies the actual-innocence gateway; those same deficiencies also prevent him from carrying his burden under § 2254(e)(2)(B).   In short, Caphart has not demonstrated the due diligence necessary to warrant expansion of the record.

## VI.  CONCLUSION

For the foregoing reasons, Petitioner Johnny F. Caphart's 28 U.S.C. § 2254 petition will be dismissed with prejudice because his claims are procedurally defaulted, foreclosed by his guilty pleas, or lack merit.  Caphart's motion to expand the record to include the biological-evidence report likewise will be denied because he has not satisfied the requirements for record expansion under § 2254(e)(2).

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy that standard, the applicant must show that "jurists

55

of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Additionally, when habeas claims are dismissed on procedural grounds, the applicant must "show[], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478. Caphart has not made the requisite showing to satisfy § 2253(c)(2); therefore, he will be denied a certificate of appealability.

Accordingly, it is ORDERED as follows:

(1)     Caphart's motion to expand the record (Doc. # 18) is DENIED;

(2)     Caphart's 28 U.S.C. § 2254 petition is DISMISSED with prejudice; and

(3)     Caphart is DENIED a certificate of appealability.

Final judgment will be entered separately.

DONE this 25th day of June, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

56